Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 3009 | **DATE** | 2/10/2004 |
| **CASE TITLE** | MEJIA vs. RUFFIN, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendants' joint motion to dismiss the third amended complaint [26-1] is denied. Defendants shall answer by February 26, 2004. ENTER MEMORANDUM OPINION AND ORDER.

*Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | FEB 1 2 2004 | |
| | Notified counsel by telephone. | date docketed | 29 |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 2/10/2004 | |
| CB courtroom deputy's initials | | date mailed notice | |
| | Date/time received in central Clerk's Office | PW mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL MEJIA, #K-83133, ) | |
| ) | |
| Plaintiff, ) | No. 03 C 3009 |
| ) | |
| v. ) | Suzanne B. Conlon, Judge |
| ) | |
| CARMIN, RUFFIN, et al., ) | |
| ) | |
| Defendants. ) | |

DOCKETED

FEB 12 2004

## MEMORANDUM OPINION AND ORDER

Michael Mejia, a state prisoner, sues Carmin Ruffin, Kenneth Briley, Stephen D. Mote, Alex D. Jones, Robert L. Radmacher, Donald J. Snyder, Jr., and Roger E. Walker (collectively, "defendants") for violations of 42 U.S.C. § 1983. Specifically, Mejia claims his right to receive visitors has been restricted without due process in violation of the Fifth, Eighth and Fourteenth Amendments. Defendants move to dismiss this action for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

## BACKGROUND

For purposes of a motion to dismiss, the court accepts all well-pleaded allegations of the complaint as true and draws all reasonable inferences in Mejia's favor. *See Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). Mejia is an inmate within the Illinois Department of Corrections ("IDOC"). He is currently incarcerated at Stateville Correctional Center. On March 14, 2001, Julia Corral, Francisco Ruiz, Rafael Carrasco and Gabriella Vargas drove to Stateville in Carrasco's car. They intended to visit Mejia. Vargas is Mejia's fiancée; Corral, Ruiz and Carrasco are Mejia's long-time friends. When the foursome arrived at Stateville, officers

1

intercepted the car before it entered prison grounds and conducted a random search. With the assistance of a trained canine unit, officers discovered the remnants of a partially smoked marijuana cigar in the rear passenger door ashtray. Carrasco conceded that the marijuana was his, and the other passengers swore that they had no knowledge of the contraband. The officers prohibited the vehicle from entering Stateville grounds. Inside the prison, officers subjected Mejia to a "shakedown" – an immediate search for drugs. Compl. at ¶ 19. A few days later, on March 19th, Mejia received written notification that Corral, Ruiz, Carrasco and Vargas had been placed on "permanent restriction," and would not be allowed to visit Mejia again until the restriction was lifted. Compl. at ¶ 21.

Mejia immediately filed a grievance with the Stateville grievance officer, Carmin Ruffin. Ruffin informed Mejia that the visitation restrictions must be upheld due to the seriousness of the violation. Mejia took the next step and appealed to Warden Briley. According to Mejia, Warden Briley failed to respond to numerous letters requesting a hearing to demonstrate that his friends had no intention of bringing marijuana into the prison. Assistant Warden Mote finally responded, stating that Mejia's grievance would be denied without hearing, but that Mejia could request review of the decision in six months. Since that denial, Mejia has diligently appealed the visitation restrictions placed on his friends. He filed an appeal with IDOC, which included an affidavit by Carrasco swearing that he owned the marijuana found in the vehicle. The IDOC denied his appeal because of the seriousness of the drug charges. Defendants Radmacher, Snyder and Walker work at the IDOC. Mejia's most recent request for relief was denied without hearing by Alex Jones, an Assistant Warden, on June 24, 2003. According to Mejia, the visitation restrictions and resulting loss of

contact with friends and family have negatively impacted his relationship with Vargas as well as his mental and physical well-being.

## DISCUSSION

The complaint will be dismissed only if it appears beyond a doubt that Mejia can prove no set of facts in support of his claim entitling him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957); *Hernandez v. City of Goshen*, 324 F.3d 535, 537 (7th Cir. 2003).

### I. Sovereign Immunity.

Defendants contend the essence of Mejia's claim is that state officials failed to follow state laws or regulations. According to defendants, although the named parties in Mejia's suit are state officials, the real party in interest is the state and the suit is barred by sovereign immunity. *See Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 105-6, 104 S.Ct. 900, 910-11 (1984) (although official, not the state, is the named party in the suit, when relief in fact operates on the state, the state is the true party in interest and sovereign immunity applies). Although defendants' explanation of the law is correct, their characterization of Mejia's claims is misguided. Mejia's claims are not based on a violation of state law or regulations, *per se*. Mejia contends defendants' arbitrary application of the state visitation regulations violates his right to due process of law – a federal constitutional claim. Thus, Mejia is effectively suing defendants in their individual capacities. State sovereign immunity does not bar the suit. *Id.* at 102-3, citing *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441 (1908).

## II. Qualified Immunity

Qualified immunity shields officials from civil liability for damages unless the plaintiff demonstrates that the officials' exercise of discretion violated clearly established law. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727 (1982); *Maltby v. Winston*, 36 F.3d 548, 554-55 (7th Cir. 1995). Qualified immunity does not preclude Mejia's request for injunctive relief. *Cannon v. Shomig*, No. 99 C 3537, 1999 WL 571052, at *3-4 (N.D. Ill. July 30, 1999). Defendants contend their decisions to restrict Mejia's visitation access are entitled to immunity because state statutes and regulations, as well as federal constitutional precedent, confers discretionary authority upon them to regulate Mejia's right to receive visitors. *See* 730 ILCS 5/3-7-2 (state statute granting prison officials discretion to restrict visitation rights for the well-being of the prison); 20 Ill. Adm. Code 501.220(a) (authorizing search of visitors); 20 Ill. Adm. Code 525.60 (regulating discretion to restrict visitation); *Overton v. Bazzetta*, ___ U.S. ___, 124 S.Ct. 2162, 2168-70 (2003). Mejia argues that defendants are not protected by qualified immunity because they exercised their discretion arbitrarily; the due process clause clearly forbids officials from using their official discretion to arbitrarily deprive individuals of their rights. *See, e.g., Richardson v. McKnight*, 521 U.S. 399, 403, 117 S.Ct. 2100 (1997). Because qualified immunity effectively frees officials from the stresses of litigation, courts are required to determine the issue as soon as possible. *Maltby*, 36 F.3d at 554-55. Although a legal question, the application of qualified immunity depends on the particular facts of each case. *Id.* At this stage of the litigation, defendants fail to show they are entitled to qualified immunity as a matter of law.

4

## III. Due Process Claim

Mejia asserts the defendants arbitrarily restricted his visitation rights in violation of the due process clause of the Fourteenth Amendment. Mejia concedes that the Fifth Amendment is inapplicable to his claims against state officials. *Willan v. Columbia County*, 280 F.3d 1160 (7th Cir. 2002). The due process clause of the Fourteenth Amendment does not require unrestricted visitation. If Mejia merely alleged that the state lacked authority to restrict his right to visitation and nothing more, the complaint should be dismissed. Prison officials enjoy broad discretion in controlling visitor access to prisoners. Denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence. *Overton*, ____ U.S. ____, 117 S.Ct. at 2168-71; *Kentucky Dep't of Correction v. Thompson*, 490 U.S. 454, 462-65, 109 S.Ct. 1904 (1989); 730 ILCS 5/3-7-2 (may restrict visitation rights for the well-being of the prison). However, Mejia's claim arguably falls outside these decisions because he challenges the constitutionality of arbitrary **application** of state visitation regulations, not the validity of the regulations. Put another way, Mejia claims defendants' arbitrary imposition of visitation restrictions deprived him of procedural due process.

Mejia's claim rests on a premise that a prisoner has a liberty interest in visitation. The Seventh Circuit has not expressly determined whether a prisoner has a liberty interest that encompasses a limited right to make or receive prison visits involving family members, but the Court has noted that a liberty interest is "conceivable." *Arsberry v. Illinois*, 244 F.3d 558, 565 (7th Cir. 2001), citing *Mayo v. Lane*, 867 F.2d 374, 375-76 (7th Cir. 1989); *Overton*, ____ U.S. ____, 117 S.Ct. at 2170 (suggesting visitation restrictions applied in arbitrary manner may be unconstitutional); *Townsend v. Snyder*, No. 01 C 9925, 2002 WL 31415711, at *2-3 (N.D. Ill. Oct. 23, 2002)

5

(correctional officers cannot arbitrarily or discriminatorily impose restrictions on visitation privileges). Thus, it is possible that Mejia may establish a due process claim based on arbitrary restrictions on his visitation rights if he shows that defendant's application of visitation limitations involve atypical and significant hardship in relation to ordinary prison life. *Cannon*, 1999 WL 571052 at *3-4; *Sandin v. Conner*, 515 U.S. 472, 484-86, 115 S.Ct. 2293 (1995). The merits of Mejia's claim is questionable. At least one of his visitors violated prison regulations by bringing contraband to Stateville. Mejia was given an opportunity to appeal the restrictions. However, a motion to dismiss tests the sufficiency of the complaint, not its underlying merits. *See Thompson*, 300 F.3d at 753. Defendants fail to establish as a matter of law that there is no basis for Mejia's claims.

## IV. Eighth Amendment Claim

Mejia's Eighth Amendment claim is similar to his due process claim. He contends the arbitrary denial of visitation rights constitutes cruel and unusual punishment. Regulations restricting inmate access to visitors are proper methods of controlling prison security. Restrictions are not a *per se* violation of the Eighth Amendment. *Overton*, ___ U.S. ___, 117 S.Ct. at 2168-70. *Overton* upheld regulations limiting visits by minors and a two-year restriction on visitation with inmates who had multiple substance abuse violations, explaining that even permanent visitation restrictions do not violate the Eighth Amendment if rationally related to legitimate penological interests. ___ U.S. ___, 117 S.Ct. at 2169-70. Nevertheless, the Court noted that if visitation restrictions "were applied in an arbitrary manner to a particular inmate," there may be a cause of action under the Eighth Amendment. *Id.* at 2170. This is the essence of Mejia's allegations. Mejia was given the opportunity to appeal the decision. More severe restrictions on visitation have passed constitutional

muster. *Id.* But the ultimate factual and legal merits of Mejia's claim are not properly before the court on a motion to dismiss.

## V.     Claims against Radmacher

Robert L. Radmacher served on the Administrative Review Board at the time Mejia appealed the visitation restrictions. Defendants argue that Radmacher should be dismissed from the suit because Mejia has no constitutional due process right to administrative review of prison disciplinary actions. They contend absent a constitutional right to review, there is no basis for Radmacher's liability. In support of this proposition, defendants cite *Quinlan v. Fairman*, 663 F. Supp. 24, 27 (N.D. Ill. 1987). *Quinlan* is of questionable durability given the *Overton* decision. *Quinlan* held that there was no § 1983 liability against a member of the Administrative Review Board because the prisoner had no constitutional right to administrative review. *Id.* Mejia responds that Radmacher is subject to liability by virtue of his involvement in the review process. Put another way, Mejia contends Radmacher is liable for arbitrarily rejecting his appeal or adopting the unconstitutional decisions of the other defendants. There is support for Mejia's position, although he does not cite it. *See Reno v. Peters*, No. 87 C 9659, 1988 WL 33840, at *5 (N.D. Ill. April 6, 1988); *see also Savory v. O'Leary*, No. 90 C 7053, 1994 WL 282289, at * 2-4 (N.D. Ill. June 22, 1994) (discussing *Reno* and *Quinlan* and suggesting ARB members are not liable because there is no constitutional right to administrative review). Mejia alleges Radmacher independently violated his due process rights by arbitrarily denying his appeal. Although the claim is questionable, it is sufficient to withstand a motion to dismiss.

## VI. Injunctive Relief

Defendants argue that Mejia is not entitled to injunctive relief. However, they frame their argument as an opposition to preliminary injunctive relief. Def.'s Motion to Dismiss, ¶ 6. Mejia has not requested preliminary injunctive relief. Thus, the court need not consider whether injunctive relief is appropriate at this stage of the litigation.

## CONCLUSION

Defendants fail to demonstrate that Mejia's claims are legally insufficient. Accordingly, the joint motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) is denied.

February 10, 2004

ENTER:

Suzanne B. Conlon
United States District Judge